UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| DAVID PASIAK, | ) | |
| Plaintiff | ) | Civil Case No. |
| v. | ) | 6:16-CV-01376-TJM-TWD |
| | ) | |
| ONONDAGA COMMUNITY COLLEGE, | ) | |
| KATHLEEN CRABILL and DAVID MURPHY, | ) | **MEMORANDUM OF** |
| | ) | **LAW IN OPPOSITION** |
| Defendants. | ) | **TO INTERVENTION** |
| | ) | **MOTION BY ADVANCE** |
| | ) | **MEDIA** |

Kevin M. Moore, attorney for Defendants Onondaga Community College, Casey Crabill and David Murphy affirms the following under penalty of perjury and respectfully moves this Court for an order dismissing the requested intervention by Advance Media New York and/or denying the motion to reverse the Stipulation of Confidentiality and Order.

## Table of Contents

Introduction………………….…………………………….………….    2

Argument…………….……………………………….…………….…..    3

    Legal standard for confidentiality………………………………    3

    Common Law Right of Public Access and Qualified
    First Amendment Right ………………………………………………    4

    This Settlement Agreement is not a "judicial document"
    subject to public access…………………………………………..    6

    New York Freedom of Information (FOIL) requests……………    10

    Public accountability……………………………….………..    12

Summary………………………………………….…………….    14

## Table of Authorities

**Statutes**

Connecticut Freedom of Information Act (FOIA)

New York Public Officers Law, Article 6, Freedom of Information Law (FOIL).

**Rules**

NDNY Local Rule 83.13

**Cases**

    **2d Circuit Court of Appeals**

        *City of Hartford v. Chase,* 942 F.2d 130, 135-36 (2d Cir. 1991).

        *Hartford Courant Co. v.* Pellegrino, 380 F.3d 83 (2d Cir. 2004).

        *In re New York Times Co.,* 828 F.2d 110 (2d Cir. 1987).

        *Joy v. North*, 692 F.2d 880 (2d Cir. 1982).

        *Lugosch v. Pyramid Company of Onondaga* County, 435 F.3d 110 (2d Cir. 2006).

        *United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995).

        *U.S. v. Glens Falls Newspapers, Inc.,* 160 F.3d 853 (2d Cir., 1998).

        *Westmoreland v. Columbia Broad. Sys., Inc.,* 752 F.2d 16 (2d Cir. 1984).

    **4th Circuit Court of Appeals**

        *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249 (4th Cir. 1988).

## INTRODUCTION

The question in this motion is whether or not NDNY Local Rule 83.13 was applied correctly by Magistrate Therese Wiley Dancks when she signed a Stipulation of Confidentiality and Order on December 11, 2017 regarding a Settlement Agreement between Plaintiff and Defendants, and whether Proposed Intervenor has a supervening right of public access to that document.

The Defendants' main points in this Memorandum of Law are:

1. The Settlement Agreement in this case is not a "judicial document" subject to either a common law or qualified First Amendment presumption of public access;

2. Magistrate Therese Wiley Danck's decision in signing the Stipulation of Confidentiality and Order was proper pursuant to NDNY Local Rule 83.13(a) and followed the requirements in *Lugosch v. Pyramid Company of Onondaga County*, 435 F.3d 110 (2d Cir. 2006) as required explicitly by Rule 83.13;

3. Confidentiality was an integral and necessary part of the settlement negotiations and so important to all parties that the Settlement Agreement was not finalized until December 12, 2017, the day after confidentiality had been guaranteed by the Magistrate's Order.

4. It is an open legal question that the Settlement Agreement would remain valid and enforceable if the Stipulation of Confidentiality and Order is reversed.

The facts of the proposed intervention are found partly in the existing record in the case. However, Proposed Intervenor's case is supplemented by multiple assertions, assumptions and innuendos of improper and/or irresponsible actions on the part of OCC and its President, Defendant Kathleen Crabill. In addition, Intervenor's case is characterized as an appeal yet adds substantially to the arguments presented in reporter McMahon's initial letter motion. Those additional arguments should not be allowed.

## ARGUMENT

**Legal Standard for Confidentiality**

The very text of NDNY Local Rule 83.13(a) establishes that the governing case for the sealing (imposition of confidentiality) of documents is *Lugosch v. Pyramid Company of Onondaga*, 435 F.3d 110 (2d Cir., 2006) and specifically *Lugosch* at 119-

127. Proposed Intervenor's Memorandum of Law does not encompass the analysis required in that case. I will do that here.

The 2d Circuit has recognized two aspects to the determination of public and/or press access to documents related to a civil case, first, whether or not a common law right of public access attaches to the document in question, and second, whether or not the press has a qualified First Amendment right to attend judicial proceedings and to access certain judicial documents commensurate with that right. *Lugosch* at 119-120.

**Common Law Right of Public Access and Qualified First Amendment Right**

The 2$^d$ Circuit noted the long history accepting the "common law right of public access to judicial documents." *Lugosch* at 119. The reasoning for that was specified as:

> "a measure of accountability and for the public to have confidence in the administration of justice. Federal courts exercise powers under Article III that impact upon virtually all citizens, but judges, once nominated and confirmed, serve for life unless impeached through a process that is politically and practically inconvenient to invoke….[P]rofessional and public monitoring is an essential feature of democratic control." *Id.*

The 2nd Circuit in *Lugosch* also stated that "[i]n addition to the common law right of access, it is well established that the public and the press have a 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" *Lugosch* at 120 quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004). The 2d Circuit elaborated as follows:

> We have articulated two different approaches for determining whether "the public and the press should receive First Amendment protection in their attempts to access certain judicial documents." [Quoting *Hartford Courant*, 380 F.3d at 92.] The so-called "experience and logic' approach requires the court to consider both whether the documents "have historically been open to the press and general public" and whether "public access plays a significant positive role in the functioning of the particular process in question." [Quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986).] "The courts that have undertaken this type of inquiry have generally invoked the common law right of access to

4

judicial documents in support of finding a history of openness." [Quoting *id.*] The second approach considers the extent to which the judicial documents are "derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings." *Lugosch* at 120 citing *Hartford Courant* at 93.

If a court has determined that the documents at hand are "judicial documents" it then must determine the weight of that presumption. *Id.*

"[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally the information will fall somewhere on a continuum from matters that directly affect an **adjudication** to matters that come within the court's purview solely to insure their irrelevance." *Id.* citing *Amodeo*, 71 F.3d at 1049 [emphasis added].

In this consideration, the definition of "adjudication" is of great importance. In this regard, the 2d Circuit cited their earlier case, *Joy v. North*, 692 F.2d 880 (2d Cir. 1982) which dealt with a summary judgment motion:

[T]here is a presumption of access to documents submitted on a summary judgment motion. The justification offered in *Joy v. North* is that summary judgment is an adjudication, and "[a]n adjudication is a formal act of the government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." *Lugosch* at 121 citing Joy *v. North*, 692 F.2d at 893.

Also, the Court defined the:

low end of the continuum, "[w]here testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Lugosch* at 121 citing *United States v. Amodeo*, 71 F.3d 1044, 1050.

While stating that: "there is a presumption of access to documents submitted on a summary judgment motion", *Lugosch* at 121, the Court further stated that:

"the weight of presumption of access may vary according to the outcome of the motion under consideration by the court. More precisely, in discussing the continuum along which the strength of the presumption will be measured, we explained that where documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches. [Citation omitted.] Moving down

5

the continuum, away from "matters that directly affect an adjudication" and towards "matters that come within a court's purview solely to insure their irrelevance," we explained that "the weight of the presumption declines….At the low end of the continuum "[w]here testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Lugosch* at 121 [citations omitted].

After considering the presumption of access, if such is found, "the court must balance competing considerations against it [citation omitted]. Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or **judicial efficiency**' and 'the privacy interests of those resisting disclosure.'" *Lugosch* citing *Amodeo,* 71 F.3d at 1049, [emphasis added].

In addition, the 2d Circuit has spoken on the issue of encouraging settlement as an Article III function:

> There is no question that fostering settlement is an important Article III function of the federal district courts. Every case must be dropped, settled or tried, and a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial. *U.S. v. Glens Falls Newspapers, Inc.,* 160 F.3d 853, 856 (2d Cir., 1998).

**This Settlement Agreement is not a "judicial document" subject to public access**

Before either a common law or qualified First Amendment right applies, "a court must first conclude that the documents at issue are indeed 'judicial documents'…. In order to be designated a judicial document, the 'item filed must be relevant to the performance of the judicial function and useful in the judicial process'." *Lugosch* at 119 citing *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).

From the analysis above, the settlement agreement in the case at hand is not a "judicial document". First, it was not filed with the Court and is not a part of the record in

this case. Second, the Court's action in finding sufficient reason to impose confidentiality was not an "adjudication" that was in any way based on the content of that document. Magistrate Danck's decision was based, rather, on the expectations of all parties for confidentiality and the plain fact that no settlement would be reached without confidentiality.

This is reflected in the findings placed in the record in the Confidentiality Stipulation and Order, Dkt. 30, on the first page:

> WHEREAS, the Parties recognize that United States District Court, Northern District of New York rules specify that settlement negotiations are confidential and private and that the information exchanged by the Parties during such negotiations are privileged and confidential:
>
> WHEREAS, because maintaining confidentiality of the settlement discussions, documents prepared in aid of settlement, drafts of any settlement related agreements between the parties and the agreements themselves **were integral to the resolution and settlement of this action, good cause exists for the entry of this Confidentiality Stipulation and Order;** [Emphasis added.]

As can be seen here, and contrary to assertions of counsel for Advance Media, Dkt. 37-3 at p. 11, these findings are stated in the record in the Stipulation of Confidentiality and Order, Dkt.30, and confidentiality was not a "convenient after the fact claim", Dkt 37-3 at p.2, or "manufactured *post hoc*", Dkt 37-3 at p.13. Also contrary to assertions by counsel for Proposed Intervenor, Magistrate Therese Wiley Dancks was not under any obligation to "consider…why *The Post Standard's* interesting in obtaining FOIL access to the settlement agreement was outweighed by the need for confidentiality…." Dkt. 37-3 at p.11. The Magistrate was required to follow Local Rule 83.13 and the governing precedent in *Logusch* and the record indicates that was done here. As can be seen above, *Logusch* incorporates into the required analysis a consideration of the First Amendment rights claimed by Intervenor. It is also clear from

7

the record that Sr. Judge Thomas McAvoy reviewed the text of the Settlement Agreement itself as is required by Local Rule 83.13(a). That is implicit in the docket entry for 12/06/2017 that indicates the Judge declined to sign it because it failed "to comply with the infancy/incompetency language requirement set forth in NDNY Local Rule 41.3. Plaintiff's counsel is directed to re-submit proposed stipulation…." There is no mention of objection to the confidentiality itself, and approval is implied from the direction to re-submit once the language required by NDNY Local Rule 41.3 was included.

Confidentiality as a necessary element in reaching a settlement has been upheld by the 2d Circuit in *City of Hartford v. Chase*, 942 F.2d 130, 135-36 (2d Cir. 1991). As in the present case, *City of Hartford* involved private parties (defendants) and a public entity, the City of Hartford, Connecticut (plaintiff). The local newspaper intervened to obtain a copy of final settlement documents under the Connecticut Freedom of Information Act (FOIA). The 2d Circuit upheld confidentiality. See the discussion below under **New York Freedom of Information (FOIL) Requests.**

In *Lugosch* the documents at issue were documents produced by the defendant in discovery and used by the defendant in a summary judgment motion. That summary judgment motion clearly implicated Article III functions. A summary judgment motion is at the heart of such functions by invoking the ultimate role of the Court in deciding the substantive rights of the parties at issue in the case. As the 2d Circuit quoted with approval in Lugosch, "because summary judgment adjudicates substantive rights and serves as a substitute for a trial, we fail to see the difference between a trial and the situation before us now [summary judgment]." Lugosch at 122 citing *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252-253 (4th Cir. 1988). The settlement agreement

in the current case was arrived at privately among the parties and was not subject to the Court's approval beyond the Court's satisfaction that the case was settle and that confidentiality was appropriate. The Affidavit of Kathleen Crabill states:

7. A settlement in principle was reached among the parties during a conference with Magistrate Therese Wiley Dancks on September 28, 2017. However, committing that to writing was not a simple process and not completed until all parties had signed. I signed on December 12, 2017.
8. From the beginning and throughout the settlement negotiations confidentiality was and is an integral part of the agreement for all parties. Contrary to the allegations, assumptions and speculation in the press, and allegations in the court papers of Advance Media, confidentiality was assumed from the beginning by all parties.
9. The Confidentiality Stipulation and Order was signed by the Magistrate on December 11, 2017, before the Agreement was finalized.

Even if the settlement agreement in the present case was found to be a "judicial document" as outlined in *Lugosch*, the countervailing issue of judicial efficiency would overbalance any such common law right. The Court stated that "documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch* at 120 quoting *In re New York Times Co.,* 828 F.2d 110, 116 (2d Cir. 1987). In this instance the principle of judicial efficiency was maintained by the parties reaching a private resolution of this matter in reliance on the confidentiality of both the settlement negotiations and the resulting Settlement Agreement.

It is clear from these principles that the Settlement Agreement in the instant case is not a "judicial document" and that no qualified First Amendment right of access exists because it was not submitted to the court, was not connected with an in-court process that would itself implicate that implied right, and did not implicate the core Article III powers of the Court outside of its function to encourage and facilitate settlement.

**New York Freedom of Information (FOIL) Requests.**

The 2d Circuit has spoken on the issue of public access to sealed documents under a state "freedom of information law":

> We have previously recognized that settlement documents in draft form are not part of the public record of a federal case, that the district court may seal documents in order to foster settlement, and that the district court's power to seal documents "takes precedence over FOIA rules that would otherwise allow those documents to be disclosed." *U.S. v. Glens Falls Newspapers, Inc.* 160 F.3d 853, 858 (2d Cir. 1998) quoting *City of Hartford v. Chase*, 942 F.2d 130, 135-36 (2d Cir. 1991).

In the case cited here with approval, *City of Hartford v Chase*, 942 F.2d at 136, the 2d Circuit held that a confidentiality order by a Federal District Court could not be overcome by the State of Connecticut's Freedom of Information Act. Each of the three phrases in the first sentence quoted in the preceding paragraph should be read as separate and independent propositions. They are separated by commas and clearly represent independent principles. The second phrase, i.e., "that the district court may seal documents in order to foster settlement" is clearly an independent general statement that is not limited to cases involving "documents in draft form". The third phrase, i.e. "and that the district court's power to seal documents 'takes precedence over FOIA rules that would otherwise allow those documents to be disclosed" definitely cannot be limited to "documents in draft form". It is a direct quote from *City of Hartford*, a 2d Circuit case involving a final settlement agreement between private contractors and the City of Hartford, Connecticut, a public entity, as in the present case.

In *City of Hartford*, 942 F.2d at 136, the 2d Circuit found that confidentiality had been essential to the settlement of the case. Consequently, as a matter of punctuation, the third phrase is a general statement that when documents are properly sealed they are not

10

otherwise available to the public under, in this case, the Connecticut Freedom of Information Act (FOIA). *Id.*

The 2d Circuit in that case said that:

> To be sure, sealing official documents should not be done without a compelling reason, and interested parties should be given an opportunity to challenge the propriety of a sealing order before the decision to seal is final. Here, however, Intervenors are unable to demonstrate that either of these principles was violated. *Id.* at 135-136.

Even more telling is that the confidentiality imposed by the District Court "takes precedence over FOIA rules [Connecticut] that would otherwise allow those documents to be disclosed." *City of* Hartford at 136. Consequently, it is reasonable to argue that such sealed documents as the Settlement Agreement in the present case also should not be disclosed under New York's FOIL because both New York's FOIL and Connecticut's FOIA laws are based on complementary principles. In addition, it can be viewed as a general principle that the order of a federal district judge should take precedence over a conflicting provision in state law. See discussion in *City of Hartford* at 136-136. As a result of these 2d Circuit cases, New York's Freedom of Information Law (FOIL), NY Public Officers Law, Article 6, is irrelevant to this motion.

However, because counsel for Proposed Intervenor has strongly asserted that the October 3, 2017 FOIL request by reporter Julie McMahon, see Dkt. 37-1, paragraph 12, was improperly denied by Defendant Onondaga Community College (OCC) on October 6, 2017, I will respond here. As stated in the Affidavit of Kathleen Crabill at paragraph 7, there was no written agreement until she signed the Settlement Agreement on December 12, 2017. According to FOIL §§ 87(2), "[e]ach agency shall, in accordance with its published rules, make available for public inspection and

11

copying all records…" with certain stated exceptions not applicable here. The FOIL law defines "record" as "any information kept, held, filed, produced or reproduced by, with or for an agency or the state legislature…." Quite clearly, a written settlement agreement in the possession of OCC would be covered by such a request. But as the facts show, no such "record" was in the possession of OCC at the time of the FOIL request simply because it did not exist until December 12, 2017. Affidavit of Kathleen Crabill, paragraph 7.

Reporter McMahon also made a subsequent FOIL request, on January 4, 2018. See Dkt 37-1 at paragraph 15. That request was denied on January 9, 2018 based on the Stipulation of Confidentiality and Order of this Court. Dkt. 37-1 at paragraph 16. As Defendants have argued herein, under *Lugosch* that denial was proper.

Reporter McMahon's subsequent FOIL request to the State University of New York (SUNY) and her appeal of their denial is also irrelevant because although OCC is a SUNY-affiliated institution it is legally a separate entity organized under Article 126 of the New York Education Law as was explained in detail in SUNY's denial. See Dkt. 37-1 at paragraphs 17-18, and Dkt. 37-2, SUNY Denial of FOIL request.

**Public Accountability**

Counsel for Proposed Intervenor has suggested that Advance Media's motives for this Proposed Intervention are to advance a public discussion of the actions of OCC and its President in this case. I will not dispute the public function of the press because that has a long and important history. I will merely note that as a Community College and as an affiliated institution of SUNY, OCC is subject to extensive public scrutiny by law. OCC is led day to day through authority delegated to its President, Defendant Kathleen

Crabill from the OCC Board of Trustees as provided in NY Education Law § 6306 and the corresponding regulations. President Crabill is responsible by law to the oversight and control of the Board of Trustees. The Board of Trustees consists of nine (9) appointed officials (Trustees), five appointed by the County Legislature, four (4) appointed by the Governor of New York State, plus one student appointed through a process involving Student Government. See *id*. In addition, OCC is required by law to execute independent annual audits of its finances for the purpose of official as well as public accountability in connection with funds allocated by the State of New York and the County of Onondaga. OCC is also required to attend public hearings of the County Legislature and its Ways and Means and Finance Committees, and by law and regulation is subject to scrutiny by the New York State Attorney General and New York State Comptroller. OCC operates fully and properly according to law and is subject to extensive public accountability.

More important is the statement by the 2d Circuit in *Lugosch* that:

> [a]lthough the presumption of access is based on the need for the public monitoring of federal courts, those who seek access to particular information may want it for entirely different reasons. However, **we believe motive generally to be irrelevant to defining the weight accorded the presumption of access.** It is true that journalists may seek access to judicial documents for reasons unrelated to the monitoring of Article III functions. Nevertheless, assessing the motives of journalists risks self-serving judicial decisions tipping in favor of secrecy. Where access is for the purpose of reporting news, courts may well learn of, and use, the information whatever the motive of the reporting journalist. [citing] *Amodeo*, 71 F.3d at 1050. Thus, what the Newspapers seek to do with the documents has no effect on our consideration. *Lugosch* at 123 [emphasis added].

It should be noted that the "presumption of access" mentioned here does not even become operative until the Court finds that the subject document is a "judicial document". And the Settlement Agreement is not a "judicial document."

## Summary

In conclusion, the above argument has explained in detail each of the points made in the Introduction to this Memorandum of Law:

1. The Settlement Agreement in this case is not a "judicial document" subject to either a common law or qualified First Amendment presumption of public access;

2. Magistrate Therese Wiley Danck's decision in signing the Stipulation of Confidentiality and Order was proper pursuant to NDNY Local Rule 83.13(a) and followed the requirements in *Lugosch v. Pyramid Company of Onondaga County*, 435 F.3d 110 (2d Cir. 2006) as specified by Rule 83.13;

3. Confidentiality was an integral and necessary part of the settlement negotiations and so important to all parties that the Settlement Agreement was not finalized until December 12, 2017, the day after confidentiality had been guaranteed by the Magistrate's Order.

4. It is an open legal question that the Settlement Agreement would remain effective if the decision to require confidentiality is removed.

I declare under penalty of perjury that the foregoing Memorandum of Law is true and correct to the best of my knowledge.

Dated: <u>March 23, 2018</u>        s/Kevin M. Moore
Bar Number: 519202
Attorney for Defendants Onondaga Community
College, Casey Crabill and David Murphy
4585 West Seneca Turnpike
Syracuse, New York 13215
315-498-2220 (telephone)
315-469-4475 (fax)
moorek@sunyocc.edu