UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID PASIAK,<br><br>                    *Plaintiff*,<br><br>− against −<br><br>ONONDAGA COMMUNITY COLLEGE,<br>KATHLEEN CRABILL and DAVID MURPHY,<br><br>                  *Defendants*.<br><br>-------------------------------------------------------------------------------<br><br>IN RE ADVANCE MEDIA NEW YORK,<br><br>           *Proposed Intervenor*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Case No. 6:16-CV-01376-TJM-TWD |

**REPLY BRIEF IN FURTHER SUPPORT OF *THE POST-STANDARD*'S APPEAL PURSUANT TO RULES 72(A) AND/OR 72(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND LOCAL RULE 72.1 FROM MAGISTRATE JUDGE'S RULING DENYING ITS MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF MODIFYING CONFIDENTIALITY ORDER**

GREENBERG TRAURIG, LLP
Michael J. Grygiel
William A. Hurst
54 State Street, 6th Floor
Albany, New York 12207

*Attorneys for Proposed Intervenor*
*Advance Media New York*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .........................................................................................1

I.      LOCAL RULE 83.13 HAS NO BEARING ON *THE POST-STANDARD*'S
        INTERVENTION MOTION ........................................................................................3

        A.      Prior to March 21, 2018, No Party Had Invoked L.R. 83.13 as a
                Ground for Nondisclosure of the Settlement Agreement. ......................................3

        B.      Defendants Have Not Satisfied L.R. 83.13's Procedural Requirements. ................3

II.     THE CONFIDENTIALITY ORDER WAS IMPROVIDENTLY GRANTED
        AND SHOULD BE MODIFIED SO AS NOT TO THWART FOIL
        DISCLOSURE OF THE SETTLEMENT AGREEMENT...................................................4

        A.      Defendants Have Failed to Demonstrate a Compelling Reason
                for Confidentiality...................................................................................................4

        B.      Defendants' Claimed Reliance Interest Is Unsupported by
                Any Record Findings. ..............................................................................................6

        C.      President Crabill's Affidavit Does Not Justify Blanket Secrecy
                Over OCC's Expenditure of Taxpayer Dollars........................................................7

        D.      Defendants' Nondisclosure Argument Flouts the Public Accountability
                Trumpeted in Their Opposition Papers....................................................................9

CONCLUSION...................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*City of Hartford v. Chase,*
    942 F.2d 130 (2d Cir. 1991)........................................................................4, 5, 8 n.6

*Daines v. Harrison,*
    838 F. Supp. 1406 (D. Col. 1993)..............................................................6, 6 n.4, 8

*Lugosch v. Pyramid Co. of Onondaga Cnty.,*
    435 F.3d 110 (2d Cir. 2006)..............................................................................1, 1 n.2

*Palmieri v. State of New York,*
    779 F.2d 861 (2d Cir. 1985)..................................................................................7

*Pansy v. Borough of Stroudsburg,*
    23 F.3d 772 (3d Cir. 1994)........................................................................... *passim*

*Schoeps v. Museum of Modern Art,*
    603 F. Supp. 2d 673 (S.D.N.Y. 2009)....................................................................9

**Statutes**

New York Freedom of Information Law,
    Public Officers' Law, Article Six, §§ 84 *et seq.* (McKinney 2008) ................. *passim*

**Other Authorities**

Local Rule 72(a) ....................................................................................................1

Local Rule 72.1(b) .................................................................................................1

Local Rule 83.13 ...............................................................................1, 1 n.2, 3, 4

## PRELIMINARY STATEMENT

Proposed Intervenor Advance Media New York, publisher of *The Post-Standard* and Syracuse.com, respectfully submits this reply brief in response to the opposition papers filed by Defendants Onondaga Community College ("OCC"), Kathleen Crabill and David Murphy,[1] and in further support of its appeal pursuant to Rules 72(a) and/or 72(b) of the Federal Rules of Civil Procedure, and Local Rule 72.1(b), from the docketed text order entered on February 20, 2018, which denied for "lack of standing" the Newspaper's motion to intervene for the limited purpose of modifying the December 11, 2017, Confidentiality Stipulation and Order agreed to by the parties to the extent it prohibits disclosure of their final settlement agreement in the underlying litigation.

OCC's lengthy discussion of *Lugosch v. Pyramid Co. of Onondaga Cnty.*, 435 F.3d 110 (2d Cir. 2006), and the First Amendment standards controlling public access to judicial documents amounts to an extended exercise in irrelevancy.[2]  (*See* Def. Br. 3-9, 12, 14)  The withheld settlement agreement in dispute was never filed by the parties with the Court.  Thus, *The Post-Standard*'s intervention motion does not take issue with the proposition, repeated mantra-like throughout OCC's brief, that the settlement agreement is therefore not subject to the constitutional presumption of public access because it does not qualify as a "judicial document." (*Id.* at 3, 6, 9 and 14)  For this simple reason, Local Rule 83.13 − which governs the sealing of judicial documents submitted to the Court − has no bearing here.  Defendants' argument to the

---

[1]  Defendants' Memorandum of Law in Opposition to Intervention Motion by Advance Media [Dkt. No. 45] dated March 23, 2018, and the Affidavit of Kathleen Crabill in Opposition to Intervention [Dkt. No. 46] executed on March 19, 2018, are cited herein by page and paragraph, respectively, as "(Def. Br. __)" and "(Crabill Aff. ¶ __)."

[2]  Defendants' misplaced reliance on *Lugosch* and Local Rule 83.13(a) ignores that "[t]he issue of whether an order of confidentiality should be modified is separable from the question concerning whether a settlement agreement subject to that order is a judicial record for purposes of the right of access doctrine." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 785 (3d Cir. 1994).  The instant intervention motion implicates exclusively the former inquiry, not the latter.

1

contrary is so palpably erroneous as to indicate either deliberate obfuscation or serious confusion about the legal principles controlling the instant motion.

Whether unwittingly or by design, Defendants fail to address the dispositive inquiry on *The Post-Standard*'s motion:  whether the Confidentiality Order stipulated to by the parties and entered by the Magistrate Judge on December 11, 2017, was justified by a compelling reason. As set forth more fully below, OCC's tepid and conclusory contention that confidentiality was "integral" to the settlement agreement falls woefully short of meeting this standard.

Stripped of its surplusage, Defendants' brief urges that a government entity can enter into a settlement agreement, ask a federal court to render it confidential through a separate order, and then claim that the settlement agreement is off limits to any third party making a valid request for disclosure pursuant to New York's Freedom of Information Law ("FOIL"), as *The Post-Standard* did here.[3]  (McMahon Aff. ¶¶ 12-18 and Exs. G, I-M)  This argument would eviscerate the bedrock purpose of public accountability animating FOIL.  *The Post-Standard* has a substantial journalistic interest in understanding and reporting on the terms of Defendants' settlement agreement, particularly because the underlying civil rights litigation initiated by Coach Pasiak implicated serious allegations of racial discrimination by OCC's administration in connection with the school's men's basketball team.  That interest far outweighs any confidentiality interest relied on by Defendants to shield from public exposure the amount of public funds expended by a public community college to avoid a public trial on those controversial and newsworthy claims.

Defendants' answering brief does nothing to dispel the disturbing conclusion that they seek to continue wholesale secrecy in order to stifle press reportage of the terms of the settlement

---

[3]    Defendants' opposing brief does not contest − because it cannot − that but for the Confidentiality Order challenged by *The Post-Standard*, OCC's settlement agreement with Coach Pasiak would be subject to FOIL disclosure as a matter of black letter law.  Nor do Defendants contest *The Post-Standard*'s standing to bring this intervention motion.

they negotiated with Coach Pasiak.  The December 11, 2017, Confidentiality Stipulation and Order was improvidently granted and should be modified as requested by the Newspaper.

I.      **LOCAL RULE 83.13 HAS NO BEARING ON *THE POST-STANDARD*'S INTERVENTION MOTION**

      A.      **Prior to March 21, 2018, No Party Had Invoked L.R. 83.13 as a Ground for Nondisclosure of the Settlement Agreement.**

Defendants' opposing papers proclaim that "[t]he question in [*sic*] this motion is whether or not NDNY Local Rule 83.13 was applied correctly by [Magistrate Judge] Dancks when she signed a Stipulation of Confidentiality and Order on December 11, 2017."  (Def. Br. 2) Defendants are wrong.  No party has ever before invoked, relied on, or applied L.R. 83.13 to seal any document in this case, including the Confidentiality Order, and there is no indication in the record that Magistrate Judge Dancks did so unilaterally.  More fundamentally, the Settlement Agreement has not been filed in this Court, under seal or otherwise − a fact which informs Defendant's central argument in opposition to public disclosure.  Defendants' entire argument predicated on L.R. 83.13, which governs the sealing of judicial documents included in the Court's case file, is therefore inapposite and should be rejected.

      B.      **Defendants Have Not Satisfied L.R. 83.13's Procedural Requirements.**

Even assuming − contrary to law and the record in the *Pasiak* case − the applicability of L.R. 83.13 to their *unfiled* settlement agreement, Defendants have failed to comply with its procedural requirements.  When L.R. 83.13 is properly invoked, the party seeking to seal a judicial document "shall attach or file that document with a blank page marked appropriately (*e.g.*, as 'Sealed Affidavit' or 'Sealed Exhibit Number __') for each requested sealed document." L.R. 83.13(a).  That did not occur here.

L.R. 83.13(a) also requires that "[a]ll material sought to be sealed shall be submitted to the Court, for its in camera consideration, as an attachment (in .pdf format) to an email sent to the assigned judge's email address listed in Section 8.2 of General Order 22, and shall be served on all counsel." *Id*. As best can be discerned from the official docket, no such initial filing with any Judge of this Court ever occurred with respect to the Settlement Agreement. To the contrary, the docket sheet entries indicate that no Judge of this Court has ever seen the Settlement Agreement, much less entered it under seal.

Before Defendants' filing of March 21, 2018 [Dkt. 45], they had never invoked L.R. 83.13 in this action – it appears to be their confidentiality rule *du jour*. L.R. 83.13 simply has no bearing here.

## II.   THE CONFIDENTIALITY ORDER WAS IMPROVIDENTLY GRANTED AND SHOULD BE MODIFIED SO AS NOT TO THWART FOIL DISCLOSURE OF THE SETTLEMENT AGREEMENT

### A.   Defendants Have Failed to Demonstrate a Compelling Reason for Confidentiality.

As OCC acknowledges (Def. Br. 11), the law in the Second Circuit is clear that a confidentiality order cannot be entered by a court "without a compelling reason[.]" *City of Hartford v. Chase*, 942 F.2d 130, 135 (2d Cir. 1991). This follows from the abusive potential of such orders to impose secrecy on information that, as here, implicates legitimate matters of public concern:

> A similar troubling tendency accompanies the increasing frequency and scope of confidentiality agreements that are ordered by the court. These agreements are reached by private parties and often involve materials and information that is never even presented to the court. With the signature of a federal judge, however, they are converted into a powerful means of maintaining and enforcing secrecy. Once signed, a confidentiality order, which has converted a private agreement into an order of the court, requires the court to use its contempt power to enforce the private agreement. . . . However,

> ***because they often involve information not in the control of the
> court, and may, as in this case, implicate public concerns,
> confidentiality orders, when not subject to proper supervision, have a
> great potential for abuse.***

*Id.* at 137-38 (Pratt, J., concurring) (emphasis supplied); *see also Pansy v. Borough of Stroudsburg*, 23 F.3d at 785 ("Disturbingly, some courts routinely sign orders which contain confidentiality clauses without considering the propriety of such orders, or the countervailing public interests which are sacrificed by the orders.") (footnote omitted).   Careful and particularized scrutiny by a reviewing court must therefore precede the entry of a confidentiality order, even when it is stipulated to by the parties.  *City of Hartford*, 942 F.2d at 136.

The sole reason proffered by Defendants for the December 11, 2017, Confidentiality Order is that it was an "integral and necessary part of the settlement negotiations" (Def. Br. 3; *see also id.* at 14) in the *Pasiak* litigation.   However, the general interest in encouraging settlements is insufficient to satisfy the *City of Hartford* standard.  A federal appellate court has rejected the argument that settlements will not be reached by parties in adversarial litigation if they cannot be secret:

> [S]ettlements will be entered into in most cases whether or not
> confidentiality can be maintained.  The parties might prefer to have
> confidentiality, but this does not mean that they would not settle
> otherwise.  For one thing, if the case goes to trial, even more is likely
> to be disclosed than if the public has access to pretrial matters.  A
> generalized interest in promoting settlement is not enough.

*Pansy*, 23 F.3d at 788 (internal quotation marks and citations omitted).

The need for confidentiality was manifest in *City of Hartford*, where the sealed information related to the "construction, operation and financing of two commercial office buildings" and "involved materials the parties regarded as highly confidential."  942 F.2d at 132.

No such commercially sensitive or proprietary business information is involved here,[4] where OCC paid out public taxpayer dollars to avoid having to defend in a public trial disturbing allegations that it imposed a rigid racial quota on the recruitment and selection of players for the school's 2015-16 men's basketball team.

### B.   Defendants' Claimed Reliance Interest Is Unsupported by Any Record Findings.

Defendants' opposing papers fail to justify subjugation of *The Post-Standard*'s interest in obtaining access to the parties' settlement agreement under New York's FOIL to their claimed need for confidentiality.  There are no findings in the record supporting the initial entry of the Confidentiality Order as stipulated by the parties that reflect consideration of the public interest in governmental transparency.  *Pansy*, 23 F.3d at 790 ("It would be improper and unfair to afford an order presumptive correctness if it is apparent that the court did not engage in the proper balancing to initially determine whether the order should have been granted.") (footnote omitted); *Daines v. Harrison*, 838 F. Supp. at 1408 ("When a court utilizes its discretion to issue a confidentiality order, it should 'weigh the interests of the public, which are presumptively paramount, against those advanced by the parties.' ") (citation omitted). Thus, the Confidentiality Order was improvidently granted and should be vacated by the Court to the extent it prohibits FOIL disclosure of the settlement agreement.   Given FOIL's mandate of transparency for settlement agreements entered into by government agencies involving the expenditure of public funds − and OCC's undoubted awareness of both its public disclosure obligations in this regard and the Newspaper's prior FOIL request (*see* Def. Br. 11-12) − Defendants' reliance interest on the Confidentiality Order issued at the tail end of the underlying litigation "must be considered

---

[4]    *See also Daines v. Harrison*, 838 F. Supp. 1406, 1409 (D. Col. 1993) ("There are no trade secrets, potentially defamatory material, or threats to national security involved in this litigation.") (vacating confidentiality order over governmental settlement agreement).

weak in this case." *Pansy*, 23 F.3d at 792.  In sum, "no amount of official encouragement and reliance thereon could substantiate an unquestioning adherence to an order improvidently granted." *Palmieri v. State of New York*, 779 F.2d 861, 865 (2d Cir. 1985).

### C.  President Crabill's Affidavit Does Not Justify Blanket Secrecy Over OCC's Expenditure of Taxpayer Dollars.

For several reasons, President Crabill's affidavit fails to establish a compelling justification for confidentiality.  First, it fails to make clear whether she was in fact present and participated in the settlement conference with the Magistrate Judge on September 28, 2017.  In and of itself, this vagueness undermines her claimed need for confidentiality as "integral" to the settlement agreement, which simply parrots the conclusory language of the Confidentiality Order itself.  (Crabill Aff. ¶ 8)  Moreover, nowhere does President Crabill aver that the parties would have been unable to reach a settlement in the absence of court-ordered confidentiality.[5]

Second, the chronology of events related by President Crabill actually undermines OCC's reliance argument.  The parties agreed to settle the case on September 28, 2017, and it was dismissed the next day by Judge McAvoy.  (Crabill Aff. ¶ 7; McMahon Aff. ¶¶ 4-5 and Exs. B-C)  President Crabill signed the settlement agreement on December 12, 2017 (Crabill Aff. ¶ 7) − *after* OCC had denied Reporter McMahon's FOIL request on October 6, 2017, on the ground that the settlement agreement "did not exist" at that time.  (Def. Br. 12)  OCC then denied a follow-up FOIL request by *The Post-Standard* based on the Confidentiality Order entered by the Court.  (*Id*.)  Defendants' unquestionable awareness of Reporter McMahon's initial FOIL request for public access to their settlement agreement with Coach Pasiak at the time they obtained confidentiality from the Magistrate Judge, and their subsequent denial of her second FOIL

---

[5]    Defendants' brief asserts that "no settlement would be reached without confidentiality" (Def. Br. 7), but this claim, which is difficult to reconcile with the fact that the parties agreed to a settlement in the case more than two months before the Confidentiality Order was entered (Crabill Aff. ¶¶ 7, 9), is not supported by anything in the record.

request based on the Confidentiality Order, reduces their reliance interest thereon to the equivalent of a legal fig leaf intended to render private that which should be public.

Third − and unsurprisingly in view of the above timeline − President Crabill does not disavow that circumvention of OCC's disclosure obligations under FOIL was a factor in seeking the Confidentiality Order. *Pansy*, 23 F.3d at 791 ("we hold that where it is likely that information is accessible under a relevant freedom of information law, a strong presumption exists against granting or maintaining an order of confidentiality whose scope would prevent disclosure of that information pursuant to the relevant freedom of information law"); *Daines*, 838 F. Supp. at 1409 (district court judge vacated magistrate judge's confidentiality order in "dispute between two public employees which was resolved − using public funds" and settlement agreement was otherwise subject to disclosure under state's open records act).

Fourth, Plaintiff's silence in the face of *The Post-Standard*'s intervention motion speaks volumes and discredits President Crabill's claim that confidentiality was "assumed from the beginning by all parties" to the settlement agreement. (Crabill Aff. ¶ 8)  There is nothing in the motion record to support that confidentiality was an "integral" factor absent which Coach Pasiak would have refused to settle the case.[6]

Fifth, President Crabill apparently wants to have it both ways.  She takes umbrage at any suggestion that she "acted irresponsibly" in disbursing public monies to settle Coach Pasiak's controversial and high profile race discrimination claims, yet refuses to allow the taxpayers in whose interest she purportedly acted in settling the case to determine whether those suggestions are "unfounded" by insisting that the settlement terms be blanketed in secrecy.  (Crabill Aff.

---

[6]   The fact that Coach Pasiak has not weighed in on whether confidentiality influenced his settlement decision not only suggests his indifference to the concern trumpeted by OCC but distinguishes *City of Hartford*, where "*the parties* informed the court that final resolution of the dispute was conditioned upon the court's entry of an order assuring that the contents of the settlement would remain confidential."  942 F.2d at 132 (emphasis supplied).

¶ 11)  She asserts that "[n]o College policy regarding discrimination has been changed" as a result of the settlement agreement, yet asks the public to take her word for it based on this selective and self-serving disclosure.  (*Id.* ¶ 10)  For someone who "made the strategic decisions regarding the conduct and settlement of the case" (*id.* ¶ 5), her "interest in maintaining the secrecy of the[] settlement baffles the mind and troubles the conscience."  *Schoeps v. Museum of Modern Art*, 603 F. Supp. 2d 673, 675-76 (S.D.N.Y. 2009).

D.      **<u>Defendants' Nondisclosure Argument Flouts the Public Accountability Trumpeted in Their Opposition Papers.</u>**

Under the circumstances, OCC's acknowledgment that it is "subject to extensive public scrutiny by law" (Def. Br. 12) rings hollow if not hypocritical.  By hiding behind confidentiality to refuse disclosure of the terms of a settlement agreement that would otherwise be available to the public as a matter of black letter FOIL law,[7] Defendants have extinguished the very public accountability − including financial transparency in OCC's operations − espoused at pages 12-13 of their brief.  In doing so, they have forced *The Post-Standard* to incur litigation expenses to make information available to the public it serves:

> In this case, the Newspapers have had to endure considerable time and expense to obtain access to information which, but for the Order of Confidentiality, is likely available under the applicable freedom of information law.  Because the Newspapers have been forced to challenge the Order of Confidentiality, many months have passed since they made their initial request for the desired documents.  This case thus illustrates the need for increased judicial awareness of the public interest in access to information under relevant freedom of information laws.

*Pansy*, 23 F.3d at 791 (footnote omitted).   No one suffers more through Defendants' recalcitrance than the citizens of Onondaga County, who have been − and continue to be − deprived of receiving highly newsworthy information in a timely manner.

---

7     *See The Post-Standard*'s opening brief at page 12 (collecting authorities).

## **CONCLUSION**

For all of the foregoing reasons, and those in the Newspaper's initial moving brief dated March 6, 2018, *The Post-Standard* respectfully requests an Order of this Court: (1) reversing Magistrate Judge Dancks's February 20, 2018, Order denying its motion to intervene for lack of standing; (2) granting intervenor status for the limited purpose of modifying the Confidentiality Order; and (3) rescinding the December 11, 2017, Confidentiality Stipulation and Order to the extent it prohibits disclosure of the final agreement memorializing the settlement entered into by the parties on September 28, 2017, together with such other and further relief as the Court deems just and proper.

DATED:  March 29, 2018                    GREENBERG TRAURIG, LLP

By:   */s/ Michael J. Grygiel*
Michael J. Grygiel
Bar Roll No. 507829
William A. Hurst
Bar Roll No. 510271
54 State Street, 6th Floor
Albany, New York 12207
Tel: (518) 689-1400
Fax: (518) 689-1499
grygielm@gtlaw.com
hurstw@gtlaw.com

*Attorneys for Proposed Intervenor*
*Advance Media New York*

*ALB 2103975v3*

10

**CERTIFICATE OF SERVICE**

I, Michael J. Grygiel, Esq., do hereby certify that on **March 29, 2018**, I served the foregoing Reply Brief on the following via the Court's CM/ECF system:

<table>
<tr><td align="center"><strong>BOND SCHOENECK & KING</strong></td><td align="center"><strong>SAUNDERS KAHLER, LLP</strong></td></tr>
<tr><td align="center">Brian J. Butler, Esq.<br>One Lincoln Center<br>Syracuse, New York 13202-1355<br>bbutler@bsk.com</td><td align="center">Merritt S. Locke, Esq.<br>185 Genesee Street, Suite 1400<br>Utica, New York 13501<br>mlocke@saunderskahler.com</td></tr>
<tr><td align="center"><em>Attorneys for Defendants<br>Onondaga County Community College,<br>Kathleen Crabill, and David Murphy</em></td><td align="center"><em>Attorneys for Plaintiff<br>David Pasiak</em></td></tr>
</table>

11