**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DAVID PASIAK,**

        **Plaintiff,**

    v.                                                  6:16:-CV-1376

**ONONDAGA COMMUNITY COLLEGE,**
**KATHLEEN CRABILL and DAVID MURPHY,**

        **Appellees/Defendants.**
_____

*In re* **ADVANCE MEDIA NEW YORK,**

        **Appellant/Proposed Intervenor.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.    INTRODUCTION**

Appellant/Proposed Intervenor Advance Media New York ("Advance Media"), publisher of *The Post-Standard* and Syracuse.com, appeals from the Text Order of the Hon. Thérèse W. Dancks, United States Magistrate Judge, that denied for lack of standing Reporter Julie McMahon's letter-motion to modify a Confidentiality Stipulation and Order entered in the case. Dkt. No. 37. Appellees/Defendants ("Defendants") oppose modifying the Confidentiality Stipulation and Order, arguing that it was properly granted. *See* Dkt. Nos. 45, 46. Advance Media has filed a reply brief responding to Defendants' arguments.

1

Dkt. No. 48. For the reasons that follow, the Court vacates Magistrate Judge Dancks's Text Order, grants Advance Media intervenor status, and remands the case for further proceedings consistent with this decision.

**II.     BACKGROUND**

Plaintiff David Pasiak commenced this action against Defendants Onondaga Community College ("OCC"), Kathleen Crabill (President of OCC), and David Murphy (OCC's Senior Vice President of College Affiliated Enterprises & Asset Management), asserting claims under federal and New York state law. *See generally*, Compl. Dkt. No. 1. Plaintiff contended that he was terminated from his job as Head Men's Basketball Coach because he refused to abide by OCC's mandated thirty percent (30%) racial quota with respect to the recruitment and selection of members for the men's basketball team for the 2015-16 season. *See id.* Plaintiff sought an award of money damages and lost wages from this publicly funded community college and its officers, "including, but not limited to, front and back pay, emotional distress, pain and suffering, compensatory and punitive damages and attorneys' fees." *Id.* ¶ 70(a). Reporters and editors from *The Post-Standard* followed the lawsuit since its commencement, and published multiple news articles and an editorial reporting and commenting on what was deemed Plaintiff's controversial termination as OCC's head men's basketball coach. *See* McMahon Decl., ¶ 11 and Ex. F, Dkt. Nos 37-1 and 37-2.

Following an in-person settlement conference with Magistrate Judge Dancks, the matter was marked as tentatively settled. *See* 09/28/17 Text Minute Entry; Order of Dismissal by Reason of Settlement, Dkt. No. 23 ("The Court has been advised by counsel

2

that this action has been settled, or is in the process of being settled."). The parties thereafter requested and received a telephone conference with Magistrate Judge Dancks relative to the settlement. *See* Dkt. No. 25 (letter request); Dkt. No. 26 (text order granting telephone conference). Following the telephone conference, the parties requested an extension of the time to move to reopen the matter, stating that "the parties have been diligently working to finalize the language of the Settlement Agreement." Dkt. No. 27. The Court granted this request, giving the parties until December 27, 2017 to submit a proposed stipulation of dismissal. *See* 11/28/17 Text Only Order, Dkt. No. 28.

On December 6, 2017, the parties submitted to Magistrate Judge Dancks a proposed Confidentiality Stipulation and Order, and requested that Magistrate Judge Dancks "so order" it. Dkt. No. 29. This Confidentiality Stipulation and Order provides:

> WHEREAS, at a confidential Court supervised settlement conference on September 28, 2017, the Parties agreed to resolve all claims by Plaintiff against Defendants;
>
> WHEREAS, the Parties recognize that United States District Court, Northern District of New York rules specify that settlement negotiations are confidential and private and that the information exchanged by the Parties during such negotiations are privileged and confidential;
>
> WHEREAS, because maintaining confidentiality of the settlement discussions, documents prepared in aid of settlement, drafts of any settlement related agreements between the parties and the agreements themselves were integral to the resolution and settlement of this action, good cause exists for the entry of this Confidentiality Stipulation and Order;
>
> THEREFORE, THE UNDERSIGNED PARTIES STIPULATE AND AGREE that they will not disclose any information exchanged by the parties to this action or provided to the Court in connection with the settlement negotiations and will not disclose any settlement related agreement, drafts thereof, or the terms or any of the conditions of any settlement related agreement to any non-party with the exception of their attorneys, and tax advisors, and in the case of Plaintiff, his immediate family, or as required by a valid court order. In response to any inquiry about the settlement of Plaintiffs claims against

> Defendants, the Parties may state only that they reached a mutually satisfactory resolution of the matter.

Dkt. No. 29-1. On December 11, 2017, Magistrate Judge Dancks "so ordered" the Confidentiality Stipulation and Order. Dkt. No. 30 ("Confidentiality Order").[1] The underlying settlement agreement was never filed with the Court.

On January 8, 2018, Julie McMahon, a news reporter employed by *The Post-Standard* and Syracuse.com, wrote to Magistrate Judge Dancks on behalf of these media outlets requesting that she rescind the Confidentiality Order, asserting that it "contradicts New York State's Freedom of Information Law, and violates the public's right to know what a taxpayer-funded institution is doing with public money." Dkt. No. 32.[2] Ms. McMahon asked Magistrate Judge Dancks to rescind the Confidentiality Order to allow the parties to disclose the terms of their settlement because: (1) the Confidentiality Order acted as a "gag order incompatible with New York's public information law;" (2) "[t]he [C]onfidentiality [O]rder constitutes an unnecessary closure of open court;" and (3) "[t]he gag order creates a dangerous precedent" that "prevent[s] public officials from telling

---

[1] The Court had previously entered a Text Only Notice advising counsel that it "declines to enter [the] parties' proposed Confidentiality Stipulation & Order as such fails to comply with the infancy/incompetency language requirement set forth in NDNY Local Rule 41.3. Plaintiff's counsel is directed to re-submit proposed stipulation w/in the next 5 days for Sr. District Judge McAvoy's consideration." *See* 12/06/17 Text Only Notice. It appears that Magistrate Judge Dancks was unaware of this Text Only Notice when she signed the Stipulation document on December 11, 2017. This may have been because the Confidentiality Order was presented directly to her, but regardless of the reason, this issue is immaterial to matters now before the Court. Further, the parties ultimately submitted a Stipulation of Dismissal with Prejudice, indicating "that no party hereto is an infant or incompetent." Dkt. No. 31.

[2] Ms. McMahon sent a nearly identical request to the undersigned, *see* Dkt. No. 33, but it was not acted on because it concerned the Confidentiality Order signed by Magistrate Judge Dancks.

constituents basic information about how their tax dollars are spent." *Id.*[3]

Defendants opposed Ms. McMahon's request, arguing that Magistrate Judge Dancks "has the authority to issue orders prohibiting disclosure of documents and information relating to settlement," and that "'[o]nce a confidentiality order has been entered and relied upon, it can only be modified if an `extraordinary circumstance' or 'compelling need' warrants the requested modification.'" Dkt. No. 34 (citing *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853 (2d Cir. 1998) and quoting *FDIC v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir. 1982)). Defendants asserted that, as indicated in the Confidentiality Order, "maintaining confidentiality of the settlement discussions, documents prepared in aid of settlement, drafts of agreements and the agreements themselves were integral to the resolution and settlement of this action," that all parties relied on the Confidentiality Order "in entering into the mutually satisfactory resolution of this matter," and that, therefore, good cause existed to enter the Confidentiality Order. *Id.* Defendants also asserted that settlement negotiations and agreements are considered confidential and private, *id.* (citing N.D.N.Y. Local Rule 83.8(m)[4]), and that entering the Confidentiality Order "was integral to the Article III function of the Court to 'protect the public interest, as well as the interests of the parties, by encouraging the most fair and efficient resolution.'" *Id.* (quoting *Glens Falls Newspapers*, 160 F.3d at 857). Plaintiff responded to Ms. McMahon's request to rescind

---

[3]Although not part of the record before Magistrate Judge Dancks, Advance Media asserts that OCC denied one of Ms. McMahon's FOIL requests "based on the fact that [OCC] is prohibited by Order of the United States District Court for the Northern District of New York from disclosing any information exchanged by the parties to the *Pasiak v.* [*OCC, et al.*] lawsuit or provided to the Court in connection with the settlement negotiations and from disclosing any settlement related agreement, drafts thereof, or the terms or any of the conditions of any settlement related agreement to any non-party." McMahon Decl. ¶ 16 & Ex. K.

[4]Local Rule 83.8(m) addresses confidentiality in the Court's Assisted Mediation Program.

5

the Confidentiality Order merely by stating that he intended "to honor and abide by his obligations under the Stipulation and Order as it reflects the parties' agreement regarding the terms and conditions of the settlement." Dkt. No. 35.

On February 20, 2018, Magistrate Judge Dancks entered a Text Order providing in pertinent part:

> The Court acknowledges the 1/5/2018 letter from non-party Julie McMahon sent to both the Hon. Thomas J. McAvoy and this Court on behalf of *The Post-Standard* and Syracuse.com. (Dkt. Nos. 32, 33 .) The letter expresses the opinion that the confidentiality order signed by this Court on 12/11/2017, contradicts New York State's Freedom of Information Law and violates the public's right to know what a taxpayer-funded institution is doing with public money. The Court also acknowledges receipt of the 1/29/2018 letters from Brian J. Butler, Esq., counsel for Defendant, and Merritt S. Locke, Esq., counsel for Plaintiff, responding to Ms. McMahon's letter. (Dkt. Nos. 34 and 35.) Inasmuch as Ms. McMahon, *The Post-Standard* and Syracuse.com are all non-parties to the action, the Court denies their request to the Court to "release and/or unseal the settlement agreement and terms of the settlement" and for "a reversal of the confidentiality order which bars the parties from discussing or disclosing the settlement agreement" (Dkt. No. 32, 33) for lack of standing.

Dkt. No. 36.

In March 2018, Advanced Media appealed from this decision, arguing: (1) that Magistrate Judge Dancks erred in holding that Ms. McMahon, *The Post-Standard,* and Syracuse.com lacked standing to challenge the Confidentiality Order; (2) that Advanced Media should be granted intervenor status for the limited purpose of seeking to modify the Confidentiality Order; and (3) that the Court should rescind the Confidentiality Order to the extent it prohibits disclosure of the terms of the parties' final settlement agreement. Dkt. No. 37. Defendants oppose the appeal to the extent Advance Media seeks to modify the

Confidentiality Order. Dkt. Nos. 45, 46.[5] Advanced Media subsequently filed a reply brief. Dkt. No. 48. Plaintiff has not responded to the appeal. The Court has elected to address the issues raised by the appeal without oral argument.

## III. DISCUSSION

Ms. McMahon's letter-motion did not indicate that she, *The Post-Standard,* or Syracuse.com sought to formally intervene in this matter, nor did it invoke Federal Rule of Civil Procedure 24. Thus, to the extent the letter-motion sought only substantive relief in the case (*i.e.*, modification of the Confidentiality Order), Magistrate Judge Dancks correctly denied the motion for lack of standing. But Ms. McMahon proceeded *pro se,* and the Second Circuit has repeatedly directed that "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks and citation omitted). Construing Ms. McMahon's letter-motion this way, it could reasonably be determined that she was seeking to intervene for the purpose of challenging the provision in the Confidentiality Order that prohibits public disclosure of the terms of the parties' settlement agreement. Inasmuch as the case involves the operation of a public university, and the resulting settlement might involve disbursement of public funds, Advanced Media (the parent-company of the media outlets where Ms. McMahon worked)[6] has standing to intervene for the limited purpose of challenging the Confidentiality Order's prohibition on public release of the terms of the

---

[5]Defendants have not argued that Advanced Media lacks standing to intervene.

[6]As a *pro se* litigant, Ms. McMahon could not have represented the legal interests of Advanced Media or the newspaper for which she worked. *See McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000) (A "*pro se* litigant ... is not empowered to proceed on behalf of anyone other than [her]self.")(citing 28 U.S.C. § 1654); see also *Vega v. Allen*, No. 17-CV-6643L, 2018 WL 4954118, at *1, n. 1 (W.D.N.Y. Oct. 12, 2018 ("A *pro se* litigant cannot represent the legal interests of another individual without being authorized to practice law.")

parties' settlement. *See City of Hartford v. Chase*, 942 F.2d 130, 134-37 (2d Cir. 1991);[7] *In re Herald Co.*, 734 F.2d 93, 102 (2d Cir. 1984);[8] *see also Giuffre v. Maxwell*, 325 F. Supp. 3d 428, 437 (S.D.N.Y. 2018);[9] *id.*[10] Thus, the Court vacates the February 20, 2018 Text Order, and grants Advance Media intervenor status for the limited purposes of seeking to modify the Confidentiality Order to allow public access to the terms of the parties' settlement agreement. *See Giuffre*, 325 F. Supp. 3d at 437;[11] *Schiller v. City of N.Y.*, No. 04 Civ. 7921 (KMK)(JC), 2006 WL 2788256, at *2 (S.D.N.Y. Sept. 27, 2006);[12] *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 164 F.R.D. 346, 351 (S.D.N.Y. 1996).[13]

Whether to grant the requested relief is a more difficult question to answer. The Confidentiality Order covers both settlement discussions and related documents, *see* Conf. Ord., Dkt. No. 30 (The parties "will not disclose any information exchanged by the parties to

---

[7](allowing intervening third parties to challenge confidentiality order over documents not part of court file)

[8]("Since by its nature the right of public access is shared broadly by those not parties to the litigation, vindication of that right requires some meaningful opportunity for protest by persons other than the initial litigants, some or all of whom may prefer closure.")

[9](Courts "have repeatedly recognized that members of the press (and other non-parties) may seek to pursue modification of confidentiality orders that have led to sealing of documents filed with the court," and that "the appropriate procedural mechanism to do so is a motion to intervene.")(interior quotation marks and citations omitted)

[10]("Although the case was closed . . . pursuant to the settlement agreement, intervention for the purpose of challenging confidentiality orders is permissible even years after a case is closed.")(interior quotation marks and citations omitted)

[11]("Whether deemed an intervention as of right under Rule 24(a) or a permissive intervention under Rule 24(b), intervention by the press . . . should be granted absent some compelling justification for a contrary result.")

[12](noting that a newspaper "may well have an absolute right" under Rule 24(a) to intervene for access court documents, and granting permissive intervention under Rule 24(b))

[13](holding that newspaper met the criteria of Rule 24(a) for intervention as of right in multi-district class action suit)

8

this action or provided to the Court in connection with the settlement negotiations"), and the settlement agreement itself and its terms. *See id.* (The parties "will not disclose . . . any settlement related agreement . . . or the terms or any of the conditions of any settlement related agreement."). There is clear precedent in the Second Circuit to prevent disclosure of the former, even if confidentiality negatively impacts Freedom of Information Law ("FOIL") disclosure obligations. *See United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 854-58 (2d Cir. 1998). But to the extent the Confidentiality Order prohibits disclosure of the terms of the settlement agreement (and ostensibly provides OCC "court ordered" authority to decline FOIL requests relative to the underlying settlement agreement, *see* fn. 3, *supra*), entry of the order requires consideration of the parties' and the public's interests in the terms of the settlement agreement. *See In re Franklin Nat'l Bank Securities Litigation*, 92 F.R.D. 468, 472 (E.D.N.Y.1981),[14] *aff'd sub nom. Federal Deposit Ins. Corp. v. Ernst & Ernst*, 677 F.2d 230 (2d Cir.1982); *see also City of Hartford*, 942 F.2d at 137-38 (Pratt, J., concurring);[15] *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 785 (3d Cir. 1994).[16] While

---

[14](While "[s]ecrecy of settlement terms ... is a well-established American litigation practice," confidentiality orders should not be entered without consideration of the parties' and the public's interests in the terms of a settlement.)

[15]As Judge Pratt observed in his concurrence in *City of Hartford*:

A . . . troubling tendency accompanies the increasing frequency and scope of confidentiality agreements that are ordered by the court. These agreements are reached by private parties and often involve materials and information that is never even presented to the court. With the signature of a federal judge, however, they are converted into a powerful means of maintaining and enforcing secrecy. Once signed, a confidentiality order, which has converted a private agreement into an order of the court, requires the court to use its contempt power to enforce the private agreement. . . . However, because they often involve information not in the control of the court, and may, as in this case, implicate public concerns, confidentiality orders, when not subject to proper supervision, have a great potential for abuse. For this reason, judges should review such agreements carefully and skeptically before signing them.

(continued...)

9

Advance Media argues that it has a legitimate public interest in the terms of the settlement agreement, Defendants assert that public disclosure of the settlement terms is not required because OCC is "subject to extensive public scrutiny by law" from OCC's Board of Trustees, annual financial audits, the Onondaga County Legislature, the New York State Attorney General, and the New York State Comptroller. *See* Def. Brief, at 12-13. It is unclear from the present record whether these competing interests were considered when the Confidentiality Order was issued, and Defendants' conclusory allegation of OCC oversight makes it impossible to weigh this issue against the public's interest in the settlement terms.

Defendants also argue that the Confidentiality Order should not be modified because the parties relied on it when they finalized their settlement. Advanced Media counters that the parties could not have relied upon the Confidentiality Order because the case was marked as settled on September 28, 2017 yet the Confidentiality Order was not issued until December 11, 2017. Further, Advanced Media asserts that the request for the Confidentiality Order was made after an initial FOIL request by Ms. McMahon was denied, thereby rasing the inference that the Confidentiality Order was intended to prevent public access to the settlement terms but was not integral to reaching settlement. *See* Reply Brief, at 7-8.[17] Finally, Advance Media argues that because there are no findings in the record

---

[15](...continued)
942 F.2d at 137-38.

[16]("Disturbingly, some courts routinely sign orders which contain confidentiality clauses without considering the propriety of such orders, or the countervailing public interests which are sacrificed by the orders.") (footnote omitted)

[17]("Defendants' unquestionable awareness of Reporter McMahon's initial FOIL request for public access to their settlement agreement with Coach Pasiak at the time they obtained confidentiality from the Magistrate Judge, and their subsequent denial of her second FOIL request based on the Confidentiality Order, reduces their reliance interest thereon to the equivalent of a legal fig leaf intended to render private
(continued...)

supporting the initial entry of the Confidentiality Order that reflect consideration of the public interest in governmental transparency, the Confidentiality Order was improvidently granted and should be vacated to the extent it prohibits FOIL disclosure of the settlement agreement.

The Second Circuit has held that "[o]nce a confidentiality order has been entered and relied upon, it can only be modified if an 'extraordinary circumstance' or 'compelling need' warrants the requested modification." *Ernst & Ernst*, 677 F.2d at 232; *see also City of Hartford*, 942 F.2d at 136.[18] The Second Circuit has also held that reliance, if it existed at the time a settlement agreement was finalized, must have been based upon what could be deemed a properly issued confidentiality order. *See Palmieri v. State of New York*, 779 F.2d 861, 865 (2d Cir. 1985).[19] Because the parties engaged in two off-the-record conferences with Magistrate Judge Dancks before the agreement was purportedly finalized, the Court cannot determine whether there was consideration of the parties' and the public's interests in the terms of the settlement agreement, and whether there was legitimate reliance on the Confidentiality Order at the time of final settlement. Given this uncertainy, the Court remands the matter to Magistrate Judge Dancks to consider these issues, and to determine whether the Confidentiality Order should be modified as requested by Advanced Media.

---

[17](...continued)
that which should be public.")

[18] ("While we join in many of the thoughts expressed in Judge Pratt's thoughtful concurring opinion, we do not think them essential to decision, in this a case of parties' reliance on the Confidentiality Order approved by the judge.")

[19]("[N]o amount of official encouragement and reliance thereon could substantiate an unquestioning adherence to an order improvidently granted.")

## IV. CONCLUSION

For the reasons discussed above, the Court vacates the February 20, 2018 Text Order [Dkt. No. 36], grants Advanced Media's motion to intervene for the limited purpose of seeking to modify the Confidentiality Order to the extent it prohibits public disclosure of the terms of the parties' settlement agreement, and remands the case to Magistrate Judge Dancks to consider the issues addressed above and to determine whether the Confidentiality Order should be modified as requested by Advanced Media.

**IT IS SO ORDERED.**

Dated: December 14, 2018

Thomas J. McAvoy
Senior, U.S. District Judge