

## ONONDAGA
### COMMUNITY COLLEGE

*A College of the State University of New York*
4585 West Seneca Turnpike  Syracuse, New York 13215-4585
(315) 498-2211  www.sunyocc.edu

OFFICE *of the* PRESIDENT

January 18, 2019

Hon. Therese Wiley Dancks
Magistrate Judge
U.S. District Court for the Northern District of New York
101 South Clinton Street
Syracuse, New York 13261

Re: 6:16-cv-01376 TJM-TWD; Pasiak v. Onondaga Community College; Motion by Intervenor Advance Media

Dear Judge Dancks:

Pursuant to your text order of January 3, 2019 (Dkt. 52) and as attorney for the Defendant Onondaga Community College (OCC), I submit this letter brief in the above case.

## INTRODUCTION

Intervenor has said in the Reply Brief that the main issue is "whether the Confidentiality Order stipulated to by the parties … was justified by a compelling reason." Reply Brief, Dkt. 48, p. 2. The standard of "compelling reason" has been met throughout the record in this case. It was stated under oath by President Kathleen Crabill in her affidavit, Dkt. 46, p. 2 and is reflected in the Confidentiality Stipulation and Order itself, Dkt. 30 on p. 1, that confidentiality was an integral part of the settlement, meaning that it was required before the parties could reach agreement and there would not have been a settlement without it. In addition, Plaintiff's attorney has stated: "It is my client's intent to honor and abide by his obligations under the Stipulation and order as it reflects the parties' agreement regarding the terms and conditions of the settlement." Letter from Plaintiff's attorney, Dkt. 35.

While there is no need to restate those arguments, it is clear that the parties' intentions with regard to confidentiality is best determined by examining the contractual terms to which they agreed in the Settlement Agreement. That Settlement Agreement has been submitted under seal to the Magistrate's chambers for *in camera* Inspection. Defendant reiterates that judicial efficiency requires the confidentiality order to remain in effect.

EXPLORE.  DISCOVER.  TRANSFORM.

Intervenor has assumed self-serving intentions on the part of OCC in seeking the Confidentiality Order. In Intervenor's Reply Brief (Dkt. 48) it is stated that:

> "The *Post Standard* has a substantial journalistic interest in understanding and reporting on the terms of Defendants' settlement agreement, particularly because the underlying civil rights litigation initiated by Coach Pasiak implicated serious allegations of racial discrimination by OCC's administration in connection with the school's men's basketball team. That interest far outweighs any confidentiality interest relied on by Defendants to shield from public exposure the amount of public funds expended by a public community college to avoid a public trial on those controversial and newsworthy claims." Dkt. 48, p2.

Intervenor's assumptions are inaccurate. I am certain that counsel for Intervenor is aware of the multiplicity of reasons that cases settle, including the expense involved in discovery as well as at trial, without regard to the underlying issues in the case. It does not appear that these possibilities were ever considered.

In addition, the *Post Standard* has received through multiple FOIL requests voluminous documentation of OCC's finances and legal affairs. There were FOIL requests covering the period from January 1, 2013 until the date of the request, for all law firm bills/invoices and check registers, all settlement agreements reached in lawsuits against OCC, all contracts, bids and requests for proposals for legal services, all records pertaining to legal fees, invoices and check registers paid to Bond, Schoeneck & King for the purpose of litigating this case. Some redactions were made in legal invoices because the information would violate New York's Personal Privacy Law, NY Public Officers Law Article 6, although none related to this case, and the Settlement Agreement in this case was the only one not provided.

OCC has been forthcoming and remarkably open in providing information about its operations. In addition, OCC is governed by New York laws that require openness and public accountability as will be outlined below. It is for all these reasons that it is difficult to credit Intervenor's claimed need for "public oversight" of OCC's operations by the *Post Standard*.

## Legal Oversight of OCC

As outlined in Defendant's Memorandum of Law in Opposition, Dkt. 45, pp. 12-13, OCC is already subject to extensive public oversight. As stated there, "I will not dispute the public function of the press because that has a long and important history. I will merely note that as a Community College and as an affiliated institution of SUNY [State University of New York], OCC is subject to extensive public scrutiny by law." Dkt. 45, p.12. I would like to supplement this section by citing the relevant New York law behind oversight of OCC.

As an affiliated institution of the State University of New York (SUNY) the college is an entity created by statute, NY Education Law §6302, and controlled by the "standards and regulations governing the organization and operation of community colleges". 8 NYCRR 600.2. The County of Onondaga, as local sponsor for OCC, has prescribed procedures for the audit of college funds under the authority of NY regulations. 8 NYCRR 600.2(a). Thus, the College is subject to

financial oversight of its budget and expenditures by the Onondaga County Legislature that holds annual public meetings to consider approval of the OCC budget. The OCC budget, including all expenditures, is also subject to approval by the State University of New York (SUNY) Board of Trustees. 8 NYCRR 602.14(f). The Annual Report to SUNY, certified by the College's Chief Financial Officer and due "within sixty (60) days after the close of the college fiscal year" is required by law. 8 NYCRR 602.14(a).

OCC is governed by the OCC Board of Trustees. That body consists of ten (10) unpaid members, five appointed by the County Legislature, four (4) by the Governor and one elected by and from among the students at the college. NY Education Law §6306(1). The Board's responsibilities and authority include oversight of all budgetary and financial matters related to the college, 8 NYCRR 604.2(b), which includes the responsibility to "make available for inspection all college policies and procedures for the convenience and information of members of the college constituency". 8 NYCRR 604.2(b)(11).

The day to day operations of OCC are led by President Kathleen Crabill. The President is appointed by the OCC Board of Trustees subject to approval by the SUNY Board of Trustees and the Chancellor of SUNY. NY Education Law §6306(2). Her authority comes by delegation from the Board of Trustees pursuant to NY Education Law §6306 as well as from 8 NYCRR 604.3. Her duties include authority over all academic, financial and budgetary matters, contracts, 8 NYCRR 604.3, and the submission of "an annual report on the operation of the college to the college trustees, and prepar[ing] such other reports as college trustees of the State University of New York may require." 8 NYCRR 604.3(d).

The result of these provisions of New York law is that while the College President makes day to day decisions regarding the operation of the college and makes decisions on recommendations for changes in policy, she is subject to oversight by the appointed Board of Trustees, a group of outside appointees that meets publicly six (6) times per year which meetings are subject to the NY Open Meetings Law, NY Public Officers Law Article 7. The Board of Trustees also has a subcommittee on Finance, Audit and Compliance that likewise meets six (6) times per year in public meetings and is also subject to the NY Open Meetings Law.

The Board of Trustees also determines "internal business and financial policies and practices" that include but are not limited to disbursements and cash control. 8 NYCRR 602.14. The Board of Trustees is also subject to "appropriate guidelines made available by the State Comptroller relating to such activities as cash control, equipment inventory control and utilization, and time-attendance and payroll" that are provided by the SUNY Board of Trustees. 8 NYCRR 602.14 (b).

In addition, there are even more detailed requirements in the regulations which include required compliance with article 126 of the NY Education Law as well as the Code of Standards and Procedures for the Administration and operation of Community Colleges provided by the SUNY Board of Trustees. 8 NYCRR. 602.1(a).

New York law also requires annual financial audits of OCC done by an independent certified public accounting firm. 8 NYCRR 602.1(c). The OCC Board of Trustees has

responsibility for this process and the audit must be "of all accounts maintained at its direction" and the Board must "render such reports respecting any and all receipts and expenditures of the college as the local legislative body or board, or other appropriate governing agency may direct." NY Education Law §6304(d)(6).

Consequently, the OCC Board of Trustees has long had a formal college policy governing annual audits. That is Policy G1 entitled *Appointment of Independent Auditors and Conduct of Independent Audit* which was last updated and approved by the Board of Trustees in a public meeting on April 3, 2006. Policy G1 requires that the annual audit include "a review and discussion with the administration and the Independent auditor of …litigation, contingencies and claims against the College and material accounting issues that require disclosure in the College's financial statements".

The OCC Board of Trustees has not changed any college policy on discrimination as a result of this lawsuit, despite Intervenor's insinuations to the contrary. See Reply Brief, Dkt. 48, p.12. College policies on discrimination as well as changes and amendments to those policies are approved by the OCC Board of Trustees in public meetings. The records of those meetings are available pursuant to the NY Open Meetings Law and available to the public from the College by a simple request either by phone at 315-498-2214, by email at hartj@sunyocc.edu, or by mail at the President's Office. Also available in the same manner are all of the annual independent audit reports on OCC's finances. Finally, OCC's Centralized Policy Manual is a public document that is open and available on the College's website at www.sunyocc.edu, or directly at http://www.sunyocc.edu/index.aspx?menu=722&id=22298.

## CONCLUSION

Defendants respectfully urge Magistrate Dancks to uphold her Confidentiality Stipulation and Order, Dkt. 30, dated December 11, 2017, as a clear reflection of the intentions of the parties and as a matter of judicial efficiency.

I declare under penalty of perjury that the foregoing letter brief is true and correct to the best of my knowledge.

Respectfully submitted,

*[signature]*

Kevin M. Moore, Attorney for Defendant
NDNY Bar No. 519202