UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID PASIAK,

                          Plaintiff,

v.                                                          6:16-CV-1376 (TJM/TWD)

ONONDAGA COMMUNITY COLLEGE,
KATHLEEN CRABILL AND DAVID MURPHY,

                          Defendants,

ADVANCE MEDIA NEW YORK,

                          Intervenor.
_____

APPEARANCES:                                     OF COUNSEL:

SAUNDERS KAHLER LAW FIRM                MERRITT S. LOCKE, ESQ.
  Counsel for Plaintiff
185 Genesee Street, Suite 1400
Utica, NY 13501

KEVIN M. MOORE, ESQ.
ONONDAGA COMMUNITY COLLEGE
  Counsel for Defendants
4585 West Seneca Turnpike
Syracuse, NY 13215

GREENBURG TRAURIG, LLP                    MICHAEL J. GRYGIEL, ESQ.
  Counsel for Intervenor
54 State Street, 6th Floor
Albany, NY 12207

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

**DECISION and ORDER**

## I.      INTRODUCTION

        Currently before the Court is a request to modify the parties' Confidentiality Stipulation

and Order (Dkt. No. 30) ("Confidentiality Order") made by then non-party reporter Julie

McMahon ("McMahon").  (Dkt. Nos. 32, 33.)  The parties responded to that request.  (Dkt. Nos. 34, 35.)  The report's letter motion was previously denied by Text Order of this Court for lack of standing.  (Dkt. No. 36.)  Intervenor Advance Media New York ("Advance Media" or "Intervenor"), publisher of The Post Standard and Syracuse.com where reporter McMahon is employed, appealed the Text Order.  (Dkt. No. 37.)  Thereafter, Senior District Judge Thomas J. McAvoy vacated the subject Text Order (Dkt. No. 36), granted Advance Media status as an intervenor, and remanded the case to the undersigned for further consideration of the parties' and the public's interest in the terms of the settlement agreement, and whether there was legitimate reliance on the Confidentiality Order at the time of final settlement.  (Dkt. No. 49.)  Familiarity of the reader with that opinion and the background of this matter is assumed.

The Court has considered the parties' underlying submissions (Dkt. Nos. 37, 45, 46, 48), and further letter briefs submitted with permission of the Court.  (Dkt. Nos. 52, 53, 54.)  For the reasons that follow, the Court modifies the Confidentiality Order as set forth herein.

## II.    DISCUSSION

### A.    Legal Standard for Modification of a Protective Order

Generally, there is a strong presumption against modification of a protective order.  In *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir. 1979), the Second Circuit found that where there has been reliance by a party on a protective order, a district court should not modify such order "absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need."  *Id.* at 296; *see also F.D.I.C. v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir. 1982) ("Once a confidentiality order has been entered and relied upon, it can only be modified if an 'extraordinary circumstance' or 'compelling need' warrants the requested modification."); *City of Hartford v. Chase*, 942 F.2d 130, 138 (2d Cir. 1991) (same).  When parties reasonably rely on a protective order, courts are "hesitant to permit modification that

2

might unfairly disturb the legitimate expectations of the parties. . . . " *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*, 255 F.R.D. 308, 318 (D. Conn. 2009) (citation and internal quotations omitted) ("EPDM").  However, the Second Circuit has also found that reliance on a protective order "would not insulate [the order] from subsequent modification or vacating if the [order was] improvidently granted" in the first instance.  *Palmieri v. State of N.Y.*, 779 F.3d 861, 865 (2d Cir. 1985) (citing *Martindell*, 594 F.2d at 296).

Intervenor Advanced Media argues the Confidentiality Order was improvidently granted and, even if properly granted, Defendants Onondaga Community College, Kathleen Crabill, and David Murphy (collectively "OCC") have not shown a compelling need for maintaining confidentiality over the final settlement agreement.  (*See generally* Dkt. Nos. 37-3, 48, 54.) Intervenor does not argue there are extraordinary circumstances present warranting modification of the Confidentiality Order.  *Id.*  OCC argues the Confidentiality Order was properly granted and Intervenor has not shown a compelling need for the Confidentiality Order to be modified. (*See generally* Dkt. Nos. 45, 53.)

### B.      The Parties' Reliance on the Confidentiality Order at the Time of Settlement

"[T]he following factors are relevant when determining whether a party has reasonably relied on a protective order: (1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of the reliance on the order." *EPDM*, 255 F.R.D. at 318.  Other relevant considerations are the Intervenor's purpose in seeking the modification and the type of materials sought.  *Id.*

The scope of the subject Confidentiality Order at issue here is limited to settlement discussions, documents prepared to aid in settlement, draft settlement agreements, and the final settlement agreement between the Plaintiff and Defendants.  (*See* Dkt. No. 30.)  As such, it is not a blanket protective order which is generally "[b]y nature overinclusive and . . . peculiarly

subject to later modification." *Id.* at 319-20 ("stipulated blanket orders are even less resistant to a reasonable request for modification") (internal quotations and citations omitted). Rather, it designates specific documents after a request for confidentiality such that it can reasonably be said to be a targeted protective order focused on a narrow set of materials without an expansive scope. *See, e.g., Martindell*, 594 F.2d at 292-93 (protective order applied only to the transcripts of twelve deponents).

"Where a protective order contains express language that limits the time period for enforcement, anticipates the potential for modification, or contains specific procedures for disclosing confidential materials to non-parties, it is not reasonable for a party to rely on an assumption that it will never be modified." *EPDM*, 255 F.R.D. at 320; *see also S.E.C v. TheStreet.com*, 273 F.3d 222, 230-31 (2d Cir. 2001) (protective orders limited or temporary on their face may not justify reliance by the parties). The Confidentiality Order here does not provide any time limitation regarding the application of confidentiality, but it does provide that the parties may disclose confidential information to certain individuals, or as required by court order. (Dkt. No. 30 at 2.[1]) Thus, certain non-parties are permitted to access the confidential information, and the parties contemplated the Confidentiality Order may be modified with a court order. Though these provisions do not completely undercut the parties' reliance, the language does reduce the reasonableness of the parties' reliance on the Confidentiality Order for "absolute and unchanging confidentiality." *EPDM*, 255 F.R.D. at 321.

The *Martindell* presumption against modification of a confidentiality order will be influenced by the amount of consideration the court has given to it at the time it was granted. "A protective order granted on the basis of stipulation by the parties carries less weight than a

---

[1]  Page references to docket entries refer to the page numbers inserted by the Court's case management electronic filing system maintained by the Clerk's Office.

protective order granted after a hearing to show good cause." *Id.* (citations omitted).  Here, as the Confidentiality Order states, the Court found good cause because the confidentiality of the settlement negotiations and agreement "were integral to the resolution and settlement of this action."  (Dkt. No. 30 at 1.)  However, "[t]he mere existence of a confidentiality order says nothing about whether complete reliance on the order to avoid disclosure was reasonable." *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 126 (2d Cir. 2006) (citing *TheStreet.com,* 273 F.3d at 231 ("Where a litigant or deponent could not reasonably have relied on the continuation of a protective order a court may properly permit modification of the order.")).  In other words, just because a court entered a stipulated protective order, it does not inevitably support the parties' complete reliance on the order for the indefinite protection of each item.

While the Court noted in the Confidentiality Order that "good cause exists" for the entry of it, the Court "so ordered" the Confidentiality Order without reviewing the final Settlement Agreement and did not set forth any specific particularized findings on the record to support the sealing of the Settlement Agreement.  (*See* Dkt. No. 30.)  To be sure, the Court held two off the record settlement conferences and, in an effort to resolve the matter, perhaps unwisely indicated to the parties that it would approve a confidentiality stipulation of the final settlement terms. (Text Minute Entry 9/28/2017; Dkt. No. 26.)  The Court then granted the Confidentiality Order upon the parties' stipulation and agreement.  (Dkt. No. 30.)  While Defendants here claim the settlement would not have occurred without the condition of confidentiality, they have not identified any other factors beyond their understanding that the Settlement Agreement would remain confidential.  (Dkt. Nos. 45 at 3, 14; 46 at 2; 53 at 1.)  Moreover, the Court is skeptical of such a claim because if the case had gone to trial, even more information regarding the merits of the claims and defenses would likely have been disclosed.  *See Pansy v. Borough of Straudsburg*, 23 F.3d 772, 788 (3d Cir. 1994).  Here, the Court "so ordered" the Confidentiality Order without

a good cause hearing and did not review the final Settlement Agreement.  Under these circumstances, the parties' reliance on the Confidentiality Order is slightly diminished and the application of the *Martindell* presumption is somewhat undermined.

Regarding the nature of the parties' reliance on the Confidentiality Order, as noted Defendants argue that confidentiality was integral to the settlement such that there would be no settlement without it.  (Dkt. Nos. 45 at 3, 14; 46 at 2; 53 at 1.)  "The extent to which a party can rely on a protective order should depend on the extent to which the order induced the party to allow discovery or to settle the case."  *EPDM*, 255 F.R.D. at 322 (quoting *Beckman Indus., Inc. v. International Ins. Co.*, 966 F. 2d 470, 475 (9th Cir. 1992)).  "The classic situation in which a party 'relies' on a protective order is where the party creates material during the course of litigation on the understanding that it will be kept confidential --- for example, by signing a settlement document or by giving confidential testimony."  *Allen v. City of New York*, 420 F. Supp. 2d 295, 300-01 (S.D.N.Y. 2006) (internal citations omitted).  Here, the Defendants claim on the one hand that they settled the case solely in reliance on the promise of confidentiality, yet they also argue settlement was reached for reasons that included "[t]he expense involved in discovery as well as trial, without regard to the underlying issues in the case."  (Dkt. No. 53 at 2.)  As Intervenor points out, however, the Defendants are publicly funded to some degree suggesting that Defendants' reliance on the stipulated Confidentiality Order was unreasonable.  (Dkt. No. 48 at 9.)  Moreover, the Plaintiff has remained largely silent on the issue of whether the Confidentiality Order should be modified only indicating that he intended "to honor and abide by his obligations under the Stipulation and Order as it reflects the parties' agreement regarding the terms and conditions of the settlement."  (Dkt. No. 35.)  Plaintiff has made no further submissions to the Court on the issue of whether the Confidentiality Order should be modified as Intervenor requests despite opportunities to do so.  (Dkt. Nos. 32, 52.)  This lack of

interest in the present dispute certainly suggests confidentiality was not paramount to Plaintiff in reaching the Settlement Agreement.

In balancing these various factors, the Court finds the Defendants' reliance on the Confidentiality Order was somewhat unreasonable given the nature of the litigation. Thus, any reliance was not so overwhelming as to warrant the indefinite application of *Martindell's* presumption against modification. The express language of the Confidentiality Order permitting disclosure of its terms to individuals who were not parties, the Plaintiff seemingly taking little to no position on whether the Settlement Agreement should remain confidential, and the minimum level of Court inquiry at the time the Confidentiality Order was approved outweigh the Defendants' reliance. Instead, the parties were entitled to rely on the Confidentiality Order's protection only to the extent that the Intervenor could make a good faith, legitimate challenge to the protective designation.

In reviewing other considerations, the Intervenor's purpose in seeking modification of the Confidentiality Order and the type of materials sought are relevant for the Court in determining whether to grant the requested modification. *EPDM*, 255 F.R.D. at 324. Here, the Intervenor seeks the final Settlement Agreement of the parties and specifically argues that the Settlement Agreement should be public given the Defendants' use of public funds to conduct its educational operations. (Dkt. No. 48 at 2.) Intervenor is especially concerned with disclosure of the amount of the settlement arguing that the public's interest in understanding the amount of "[p]ublic funds expended by a public community college to avoid a public trial on . . . controversial and newsworthy claims" outweighs any confidentiality interest relied on by Defendants. *Id.* Thus, the Court turns to the issues of whether the Court improvidently granted the Confidentiality Order by considering the parties' and the public's interest in the terms of the parties' Settlement

Agreement, and whether there is a compelling need for modification of the Confidentiality Order.

###### C.    Propriety of the Confidentiality Order

Intervenor argues the Confidentiality Order was improvidently granted in part because Defendants sought to avoid disclosure under New York's Freedom of Information Law ("FOIL"), *Public Officers Law*, Article 6, Sections 84 *et seq.* (McKinney's 2020).  (Dkt. No. 54 at 1-4.)  Intervenor points to the chronology of events leading up to the Confidentiality Order's entry to argue the Defendants obstructed its attempts to obtain the settlement information.  (Dkt. No. 37-3 at 8-11, 15-17.)  Intervenor also argues that there were no findings on the record to support the Confidentiality Order.  *Id.* at 15.  "By failing to consider, let alone explain, why [Intervenor's] interest in obtaining FOIL access to the settlement agreement was outweighed by the need for confidentiality, the [Confidentiality Order] was 'improvidently granted *ab initio*.'" *Id.* (citing *Palmieri*, 779 F.2d at 865).  In contrast, Defendants do not specifically address the propriety in the Court's grant of the Confidentiality Order, but instead argue that it is not a judicial document subject to public access since it was never filed with the Court, and that the document is not accessible under FOIL because it was sealed by the Court.  (Dkt. No. 45 at 4-12.)

The Second Circuit has held that a sealing order would be improvidently granted in circumstances, for example, where such an order furthered criminal activity.  *Palmieri*, 779 F.2d at 865 ("[A] finding of illegality could and likely would serve as a predicate for a finding of improvidence.").  "[T]he requisite inquiry is whether the issuing official . . . reasonably should have recognized a substantial likelihood that the settlement would facilitate or further criminal activity."  *Id*. at 865-66.

Here, as noted above, the Court, held two off the record settlement conferences and, in an effort to conclude the matter, indicated to the parties that it would approve the parties' confidentiality stipulation of the final settlement terms.  (Text Minute Entry 9/28/2017; Dkt. No. 26.)  Therefore, regardless of the timing of when the Confidentiality Order was finalized in relation to the Intervenor's FOIL requests, the Court finds the sealing was not illegal on its face, nor was it intended to serve any underhanded motive or nefarious function for Defendants to avoid a FOIL request.

However, Intervenor is correct that the Confidentiality Order does not sufficiently explain the consideration of the parties' and the public's interest in the terms of the settlement.  While the Confidentiality Order noted it was granted for good cause because confidentiality was "integral to the resolution" of the action, (Dkt. No. 30 at 1), this is not necessarily enough to seal the settlement terms because entry of such an order requires specific consideration of the parties' and the public's interests in final settlement terms.  *See In re Franklin Nat'l Bank Securities Litigation*, 92 F.R.D. 468, 472 (E.D.N.Y. 1981), *aff'd sub nom. Federal Deposit Ins. Corp. v. Ernst & Ernst*, 677 F.2d 230 (2d Cir. 1982); *see also City of Hartford*, 942 F.2d at 137-38 (Pratt, J., concurring); *Pansy*, 23 F.3d at 785.  Even though Defendants claim the settlement would not have occurred without a condition of confidentiality, Plaintiff has only indicated he would abide by the terms of the settlement agreement since the Intervenor's application to intervene was granted.  Thus, Defendants' assertion does not necessarily insulate the Confidentiality Order from unsealing if the public's interest in the terms of the settlement outweigh the parties' interest in keeping the Settlement Agreement confidential.  *Id.*

To that end, Intervenor argues the settlement involves resolution of a newsworthy case because it involves a public controversy due to the racial quota aspects of the claims.  (Dkt. Nos. 37-3 at 19-20; 54 at 4-5.)  Intervenor notes Defendant OCC is an educational institution that is

partially funded by public funds and there is a strong presumption against confidentiality because the public has an interest in seeing that public funds are used properly.  (Dkt. No. 54 at 4-5.) Indeed, the case involves the operation of a public university and the resulting settlement may have involved disbursement of public finds.  As noted, Intervenor further argues there are no findings in the record regarding consideration of the public's interest in government transparency.  (Dkt. No. 48 at 9.)

By contrast, Defendants argue that Intervenor has previously received documentation of OCC's finances and legal affairs through FOIL requests.  (Dkt. Nos. 45 at 12-13; 53 at 2.) Defendants also note that OCC and its officials are already under significant public scrutiny since it is affiliated with the State University of New York ("SUNY") and, as such, state standards and regulations govern the college's operations.  *Id.*  OCC is also subject to auditing and budget oversight by the Onondaga County Legislature, and its expenditures are subject to approval by the legislature and SUNY.  (Dkt. No. 53 at 3.)  According to Defendants, OCC's Board of Trustees also has fiduciary oversight of the college's budget and expenses, and independent auditors perform OCC's financial audits under the direction of the Board of Trustees.  *Id.* at 3-4.  All of this, Defendants contend, shows OCC is already held accountable to the public and thus is transparent regarding its financial records such that there is no need for the Confidentiality Order to be disturbed.

None of that oversight, however, addresses the Settlement Agreement in this case and thus the Court agrees with Intervenor that the public's interest outweighs the Defendants' interest in the disclosure sought by Intervenor.  As noted above, there must be specific findings on the record showing the public's interest in disclosure was weighed against the privacy interests of the parties to the settlement.  *See In re Franklin Nat'l Bank Securities Litigation*, 92 F.R.D. at 472, *aff'd sub nom. Federal Deposit Ins. Corp.*, 677 F.2d 230.  There were no such specific or

particularized findings here before the Confidentiality Order was entered.  Further, the interests of the public are presumptively paramount to the interests advanced by the parties.  *Id.* (citations omitted).

In *In re Franklin*, the court did not modify the confidentiality order upon the request of an intervenor because the court made specific findings in initially considering the issue of sealing.  *Id.* at 472.  Additionally, the matter settled just after a trial that was expected to last six months and cost millions of dollars began.  *Id.* at 469-70.  It involved complex multi-district litigation with numerous plaintiffs and defendants and, at the time the sealing order was entered, "the court considered the historical importance of the [bank's] failure and the public interest in disclosure against the private interests that would be furthered by a resolution of the matter without further litigation.  The latter was more compelling."  *Id.*

In contrast, the present case is not complex and involves the operation of a public university wherein Plaintiff contended he was terminated from his job as the Men's Basketball Coach because he refused to follow OCC's thirty percent racial quota with respect to recruitment and selection of members for the men's basketball team during the 2015-16 season.  (*See generally* Dkt. No. 1.)  Intervenors assert its reporters and editors published multiple news articles regarding what was deemed a controversial termination of Plaintiff which affected the public interest.  (Dkt. Nos. 37-1; 37-2.)  As previously stated, the Court also did not conduct a careful, particularized review of the parties' Settlement Agreement before executing the Confidentiality Order which was required in this case inasmuch as it involved a suit affecting the public interest.  *See City of Hartford*, 942 F.2d at 136.

Moreover, the Intervenor, being the party seeking access, does not have special investigatory powers at its disposal to obtain the settlement information other than through a FOIL request.  It does not have the power to subpoena the document or people familiar with it.

11

Therefore, it does not have any "special burden with respect to the materials it seeks to unseal." *Palmieri*, 779 F.2d at 866 (the State of New York, in seeking access to a sealed settlement agreement, has a "privileged position with respect to its investigatory powers" such that it raised a rebuttable presumption that it may have been able to get the information without the necessity to unseal the settlement documents) (citing *Wilk v. American Medical Association*, 635 F.2d 1295, 1299-1300 (7th Cir. 1981)).

Because the Court did not make specific findings on the record showing the public's interest in disclosure was weighed against the privacy interests of the parties to the settlement and did not carefully or particularly scrutinize the underlying Settlement Agreement, the Court finds its Confidentiality Order was improvidently granted.  Therefore, it may be modified although the Court previously approved it since "[n]o amount of official encouragement and reliance thereon could substantiate an unquestioning adherence to an order improvidently granted." *Palmieri*, 779 F.2d at 865.  The Court also finds the parties' interest in keeping the settlement amount confidential is outweighed by the public's interest in transparency regarding the amount a public university expended to settle the matter, especially since one party to the agreement, the Plaintiff, seems largely uninterested in protecting the Settlement Agreement.

**D.      Compelling Need for Modification of the Confidentiality Order**

Because the Court has found the Confidentiality Stipulation and Order was improvidently granted at the outset, the Court need not reach the question of whether Intervenor has shown a compelling need or extraordinary circumstances necessary to modify the subject order.  Relying on the Third Circuit's *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, Advance Media argues OCC has failed to demonstrate a compelling need for maintaining confidentiality of the subject Settlement Agreement.  (Dkt. Nos. 37-3 at 17; 48 at 7.)  However, while the Second Circuit has indicated that "sealing official documents should not be done without a compelling reason," *City*

*of Hartford*, 942 F.2d at 135, the Circuit has repeatedly stated that if the subject order is not found to be improvidently granted, then the party *seeking* to modify a confidentiality order has to show a compelling need (or extraordinary circumstances) for the requested modification. *See, e.g.*, *Palmieri*, 779 F.3d at 866. Here, then, it is the burden of the Intervenor to show there is a compelling need for modification of the Confidentiality Order since it has not argued extraordinary circumstances are present.

As noted, since the Court finds the Confidentiality Order was improvidently granted, it need not reach whether Intervenor has shown a compelling need for the subject order to be modified. However, the Court construes Intervenor's same arguments regarding the public's interest in disclosure as the compelling need to modify the Confidentiality Order. In this regard, the Court also finds Intervenor has shown a compelling need to modify the Confidentiality Order as to unsealing the total settlement amount only, and not the entire Settlement Agreement or underlying documents concerning the settlement negotiations of the parties. *See U.S. v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 858 (2d Cir. 1998) (access to settlement negotiations, draft agreement, settlement conference statements is negligible to nonexistent). The Court finds Intervenor has shown a compelling need in that transparency issues involving expenditures of public funds in this case outweigh the parties' interest in sealing the actual settlement amount, but not the entire Settlement Agreement. As such, only those portions of the Settlement Agreement pertaining to the actual amount of the settlement shall be unsealed as directed below.

**III.     CONCLUSION**

After carefully reviewing the entire record in this matter, the parties' and Intervenor's submissions and the applicable law, and for the above-stated reasons, the Confidentiality Order

is modified as set forth herein.[2]

      **ACCORDINGLY**, it is hereby

      **ORDERED** that pursuant to a proper FOIL request, the Settlement Agreement shall be unsealed to the extent that Defendants shall produce a complete copy of page one of the Settlement Agreement, and all of paragraphs 1 and 2 only as continued on page two of the Settlement Agreement; and it is further

      **ORDERED** that pursuant to a proper FOIL request, the Settlement Agreement shall be unsealed to the extent that the Defendants shall produce a complete copy of page one of "Addendum A" (the Grievance Settlement Agreement) of the Settlement Agreement, and paragraph 1 only as continued on page two of "Addendum A"; and it is further

      **ORDERED** that this Decision and Order shall be effective thirty (30) days after the date of its entry.

      **IT IS SO ORDERED.**

Dated: May 29, 2020
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[2]  The Court acknowledges it has taken an undue amount of time to issue this Decision and Order and appreciates the parties' and the Intervenor's patience.